## Walter B. Mason *et al. versus* Thomas W. Thompson and Trustee.

T. being indebted to B., a contract was made between them, in September, as follows : — " I, B., agree to purchase and do hereby purchase of T." a certain quantity of cheese, " if he makes as much," and certain cattle, at fixed prices, " T. to keep the cattle on his farm free of expense until foddering time, if there cannot be any sale made that will answer before ; the cheese to be kept until the 1st of November next, unless called for sooner ; and for the payment of the amount of these articles B. is to discharge all the claims he may have against T., and the balance he is to pay in cash whenever demanded." It was *held*, that this was not a present sale, but that as the articles were from time to time delivered, the contract was *pro tanto* executed, and that the property in the articles not delivered remained in T.

The writ in this case was dated the 22d of October, 1834. Asahel Booth, the supposed trustee, stated in his answers, that, at the time of the service of the writ, Thompson was

Mason
*v.*
Thompson
and Tr.

indebted to him on a balance of accounts, in the sum of $120 ; that before that time, viz. on the 18th of September, 1834, a written contract was made between them as follows : — " This certifies that I, Asahel Booth, agree to purchase of, and do hereby purchase of, T. W. Thompson,

| | |
|---|---:|
| 8000 lbs. new milch cheese, if he makes as much, at 7½ cts. per lb., is | 600 00 |
| 1 horse, | 75 00 |
| 1 horse, | 65·00 |
| 4 cows, | 60·00 |
| 1 yoke of oxen, | 60·00 |
| | $ 860·00 |

the said Thompson warranting the above stock sound in every particular, and to keep them on his farm, free from expense, until foddering time, if there cannot be any sale made that will answer before. And we mutually agree, that there shall be twenty dollars swing on the property. That is, if the above property does not sell for the above amount, then the said Thompson is to deduct twenty dollars. And if it sells for twenty dollars more, after deducting charges for freight, &c. the said Booth is to allow and add twenty dollars more to the above amount. The said cheese to be kept until the first day of November next, unless called for sooner. And for the payment of the above sum the said Booth is to discharge all the claims he may have against the said Thompson, and the balance he is to pay in cash, whenever demanded. Colerain, Sept. 18, 1834 ; " that at the time of the service, the respondent had received one cow, and 5941 lbs. of cheese, which are credited in the accounts showing the abovementioned balance ; that after the service he received three cows and a yoke of oxen, of the value of $ 105, which was all that he had ever received on the contract, though he had twice, at least, demanded of Thompson the remainder of the articles ; and that he had received notice, that such remainder had been assigned by Thompson to M. C. Howard and D. Donelson.

*Sept* 28*th.*     *H. Chapman* and *Aiken,* for the plaintiffs.

*Wells* and *Alvord,* for the respondent, contended the contract was not a sale, but an agreement for a sale ; *Jackson* v.

*Myers*, 3 Johns. R. 388 ; *Foster* v. *Foster*, 1 Lev. 55 ; *Goodtitle* v. *Way*, 1 T. R. 735 ; *Doe* v. *Clare*, 2 T. R. 739 ; that if it was an immediate sale, the property did not pass, because there had not been a delivery, but something remained to be done ; *Davenport* v. *Wheeler*, 7 Cowen, 231 ; *Zagury* v. *Furnell*, 2 Campb. 240 ; *Owenson* v. *Morse*, 7 T. R. 64 ; *Hanson* v. *Meyer*, 6 East, 625 ; *Simmons* v. *Swift*, 5 Barn. & Cressw. 857 ; *Atkinson* v. *Bell*, 8 Barn. & Cressw. 277 ; 1 Wheaton, 84, note *d* ; *Coit* v. *Houston*, 3 Johns. Cas. 254 ; *Outwater* v. *Dodge*, 7 Cowen, 85 ; *Macomber* v. *Parker*, 13 Pick. 175 ; *Andrews* v. *Ludlow*, 5 Pick. 28.

MORTON J. delivered the opinion of the Court. The liability of the trustee depends entirely upon the construction of the agreement entered into between him and the defendant on the 18th of September, 1834. If the trustee is chargeable only with what he had actually received, the balance is in his favor. But if he is accountable for all the chattels mentioned in that agreement, then there is property in his hands for which he must be adjudged trustee. *Sept. 30th.*

Was this a present sale of the property? Or was it an executory contract, by which the trustee prospectively agreed to become the purchaser ? If the former, then the property changed owners immediately ; if the latter, it was uncertain, and, like all other executory contracts, liable to be defeated by innumerable contingencies. Some of the language favors the one construction, and some the other. " *I agree to purchase*," seems to look to future action ; " *and do hereby purchase*," strongly implies a present bargain ; and both together, doubtless, favor the latter construction. But the meaning of an instrument is not to be determined by an adherence to the literal import of detached phrases, but by the fair construction of all the language together. This is the safest mode of ascertaining the intentions of the parties.

And in reading over the whole agreement, we entertain no doubt of its meaning. The parties could not have intended a present sale. Something remained to be done to transfer the property, and if it had perished in that state, the loss must have fallen upon the defendant.

Mason
v
Thompson
and Tr.

It is contended by the plaintiff's counsel, that, as between the buyer and seller, no delivery is necessary. But there must at any rate be a perfect contract of sale. The owner must intend to part with his property, and the purchaser to become the immediate owner. Their two minds must meet on this point ; and if any thing remains to be done before either assents, it may be an inchoate contract, but it is not a perfect sale.

The general rule is, that where any operation, as surveying, weighing, measuring, counting, or the like, remains to be performed, *in order to ascertain the price, or the quantity, or the parcel to be delivered, the contract is incomplete and the property does not pass*. This is laid down by Brown on Sales, 44, and is supported by numerous authorities, many of which were cited in the argument. The stock had not been delivered, and could not be till a time subsequent to the service of the writ, because it was a part of the contract, that the former owner should support it. The cheese had not been delivered, and some of it had not been made, and it was uncertain whether it would be. It was not paid for, nor was there any indebtedness for the price, for by the contract it was not to be credited till delivered.

The same construction of the contract must apply to all the articles named in it. How could it be deemed a present sale of the cheese, when neither that nor the material of which it was to be made were then in existence, or, as far as could be known, ever would be ?

Nor is here any delivery which will give the slighest aid to the plaintiff's claim. The articles were, by the agreement, to be delivered from time to time, and as fast as they were delivered the contract was *pro tanto* executed, and the property vested in the trustee, and he became accountable for the price. But there is no pretence that the cow, or the quantity of cheese, was delivered for or as representing the whole.

And we cannot perceive how the principle with which the plaintiffs' counsel started can apply. Although a contract of sale may be good between the parties to it, yet here were assignees ; and property will not pass against the just rights of creditors or purchasers without a delivery. But it is not

necessary to rely on this ground, because we think it is abundantly evident that the parties themselves never intended to pass this property any sooner or farther than it was delivered.

*Trustee discharged.*